## Wilson *versus* Allegheny City.

1. An Act of Assembly authorized the councils of a city to grade, improve, &c., streets, &c., and assess the cost on property abutting on such streets. A chartered toll-road within the city was, with consent of the corporation, graded by the councils. *Held*, that property abutting on it was not liable to be assessed for the cost.

2. The power to assess the cost of improvement on owners abutting on streets is confined to those which the city is empowered to improve, and relates to public streets, not to private toll-roads.

3. A contract with the road company to allow the city to grade their road does not give the city power to assess the cost of the improvement on abutting owners.

4. Municipal liens rest upon the *law* alone. The power to assess the cost of improvement as a lien cannot arise from benefit to the abutting owner.

5. A municipal lien is an adverse right given by law against the will of the citizen, and, unless plainly given, cannot take his property or money.

6. The laws relating to improving streets, &c., in Allegheny city, considered and construed.

October 11th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1875, No. 103.

This was a scire facias on a municipal claim issued by the city of Allegheny against James Wilson, to April Term 1874 of the court below.

The claim was filed, March 13th 1874, for $900.90 against a lot beginning at the corner of the Perrysville road and a sixteen-foot alley, and along said road westerly 165 feet to lot of Simon Drum, &c.

The road referred to as the Perrysville road is the "Allegheny and Perrysville Turnpike Road," constructed under an Act of Assembly of February 27th 1849, Pamph. L. 299, subject to the provisions of the General Turnpike and Plank-road Law of January 26th 1849, Pamph. L. 10; 2 Br. Purd. 1429. The act of incorporation authorized the construction of a turnpike or plank-road from the north line of the city of Allegheny at the end of Federal street, to extend towards the borough of Erie seven miles, with power to extend it further, and with power to erect gates and collect tolls when three miles of the road should be completed; the road was constructed as a plank-road, and tolls collected up to the time of this suit.

By Act of April 9th 1867, Pamph. L. 979, the boundaries of Allegheny City were extended so as to take in territory in which Wilson's property was situate, and to embrace about two miles or more of the plank-road; the property against which the claim is charged is on the plank-road about three-quarters of a mile from the old city line. By Act of April 17th 1869, Pamph. L. 1168, the councils of Allegheny City were authorized to purchase the

[Wilson v. Allegheny City.]

rights of all the various chartered companies for the portion of their roads lying within the limits of the city, upon such terms as might be agreed upon.

The Act of March 31st 1870, Pamph. L. 717, consolidated the previous acts relating to Allegheny City, and included within its limits all the territory which then constituted the city. All ordinances, regulations, &c., in force in the city, and not inconsistent with the act, were to remain in force until altered, modified or repealed by councils. By Act of April 1st 1870, Pamph. L. 751, the councils were authorized to lay out, widen, extend, &c., the streets of the city, to grade, pave, &c., the same, and to levy and collect the value of property taken or damages done by assessment on the properties benefited thereby, and to levy and collect the cost of grading, paving, &c., from the owners of property abutting on "said streets," &c., thus improved; the assessments levied to be first liens on the properties assessed.

On the 13th of May 1871, Pamph. L. 818, an act was passed enacting :—

Sect. 1. That whenever the councils of the city of Allegheny shall deem it for the public interest that the said city should control so much of any turnpike or plank-road as lies within the limits of said city, and that the same should be freed from toll, then the said councils may direct the city solicitor to institute proceedings therefor, and the said solicitor shall present a petition to the Court of Quarter Sessions setting out the facts; whereupon said court shall appoint three discreet citizens, who shall proceed to view and appraise so much of any turnpike or plank-road as lies within the limits of said city, and report to said court what amount shall be paid by said city therefor; said court shall have power to approve, to modify, correct, or quash the report of said viewers, or appoint new viewers, with like power to approve, modify, correct, or quash their report.

Sect. 2. That whenever the amount to be paid shall have been finally determined, and the same paid, or secured, or tendered to the officers of said turnpike or plank-road, then so much thereof as lies within the limits of said city shall pass under the control of said city, as a street thereof, and all toll-houses shall be removed therefrom outside the city limits.

In 1872 the councils passed an ordinance for opening and grading Buena Vista street, which connected with the plank-road; to make an easier grade at the connection it became necessary to lower the grade of the plank-road at that point. An agreement was therefore made between the city and the plank-road company, by which the company "gives consent to the entry upon and grading of said road for said purposes by said city, as per profiles in the city engineer's office, and said city agrees on its part to carry on the work on said road so as not to interrupt travel, and to replace the planks

29 P. F. SMITH—18

[Wilson *v.* Allegheny City.]

removed by said city in as good condition as when removed, and to grade said road at both sides of its intersection with the grading of said street, so as to prevent any abrupt change in the grade of said road. And it is further agreed that the city will assume all responsibility in case of accidents to travel on account of said grading, or in case of action for damages by property holders from change of grade of plank-road."

On the 17th of April 1873, the councils passed an ordinance for grading the plank-road between the head of Buena Vista street and the east line of Wilson's property, a distance of 330 feet. The city took up the planks, graded the road and replaced the planks; the grade was reduced in front of Wilson's property and was not an injury but a benefit to him. No proceedings were had under the Act of 1871 to purchase or condemn any part of the plank-road.

The case was tried December 7th 1874, before White, J.

The plaintiffs having given evidence to sustain their claim, rested.

The defendant testified that he paid toll every three months; there was a toll-gate on each side of his property; when he moved to the property it was not within the city limits; the road company kept up the road and the gates as before the city was extended. There was a walk laid by the city on his property in 1870, for which he paid an assessment.

Plaintiffs, in rebuttal, gave evidence that defendant saw the grading every day as it was going on and made no objection to it; also that defendant frequently requested the city engineer to change the grade of the road opposite his property, saying that if the grade were changed it would be a great favor to him; under the approval of the councils the grade was changed according to his request; the change increased the expense. There was evidence that he, with another property owner adjoining him, requested that the plank-road might be graded, and in consequence of their request the agreement was made with the plank-road company.

The court charged :—

" This case turns on the question of law whether the city had power to grade the plank-road and assess the cost upon the abutting properties, under the general Act of Assembly providing for the improvement of the streets of the city. There are no material facts in dispute. There is some conflict in the testimony as to what Mayor Drum and the defendant said in the street committee, in the way of requesting the work to be done. There is no allegation or testimony that the defendant presented a formal petition to the councils or that committee, asking to have this grading done. Nor is there any evidence or even allegation, that he promised to pay for it. He requested the grade to be lowered at his property, which increased the expense, and perhaps it may be inferred that most, if not all, the work done opposite to his pro-

[Wilson v. Allegheny City.]

perty was done in consequence of what he said to members of the street committee. But if the city had no legal right under the Acts of Assembly to grade this portion of the plank-road, and assess the properties abutting thereon with the cost, I cannot see that such request on the part of defendant would give the city a right to file a lien therefor. This is a sci. fa. on a municipal lien, and must be sustained by an Act of Assembly authorizing it. The defendant might be liable to the city in an action of assumpsit, and yet the city might not have the right to enforce the collection of her claims by a municipal lien." * * *

The court further instructed the jury: "That the plaintiffs are entitled to recover the amount of the assessment on defendant, with interest, subject to the opinion of the court in banc on the question of law reserved, to wit: whether the city, under the Acts of Assembly and the city ordinances in evidence, and the undisputed facts in the case, had a legal right to grade the plank-road from the head of Buena Vista street to the east line of defendant's property, and assess the cost thereof upon the properties abutting thereon."

The verdict was for the plaintiff for $1012.05.

The court in banc afterwards entered judgment on the verdict for the plaintiff on the reserved question.

The defendant took a writ of error.

The error assigned was, entering judgment for plaintiff on the reserved point.

*A. M. Brown,* for plaintiff in error.—The 5th article of the amendments to the Constitution of the United States was to prevent the general government from taking property for public use without compensation; it was not intended as a restraint upon state governments: Barron *v.* Baltimore, 7 Peters 243; Withers *v.* Buckley, 20 Howard 84. A chartered toll-bridge or road may be condemned by a state under the power of eminent domain: West River Bridge Co. *v.* Dix, 6 Howard 507; Toll Bridge Co. *v.* Railroad Co., 17 Conn. 40; Railroad Co. *v.* Railroad Co., 2 Gray 1; Bridge Company *v.* Lowell, 4 Id. 474. Authority by a legislature to a municipal corporation to vacate, alter or relay streets, does not give power over a turnpike company: Quinn *v.* Patterson, 3 Dutcher 35.

*W. B. Rogers,* for defendant in error, cited Stormfetz *v.* Turnpike, 1 Harris 555; State *v.* New Brunswick, 3 Vroom 549.

Chief Justice AGNEW delivered the opinion of the court, January 6th 1876.

The city of Allegheny claimed to recover against defendant below the cost of grading so much of the Allegheny and Perrys-

ville Plank-road as lies opposite to his lot.    This plank-road was laid out under an act of incorporation, passed the 27th of February 1849, Pamph. L. 290, many years before the territory embracing the said lot was brought into the city of Allegheny.    It was a toll-road laid out under the provisions of the Act of 26th of January 1849, regulating turnpike and plank-road companies; it was then not a public street of the city of Allegheny; has it since become so by any law or act of legislation ?    In the year 1867, the legislature, by an act in general terms (Pamph. L. 979), annexed to the city of Allegheny the territory in which this portion of the plank-road lies; the revised charter of 1870, in general terms, embraced all the territory then within the city of Allegheny; it confers many powers for the purpose of police, health, improvement, &c., but none specially over the roads of private corporations laid out under the terms of their charters.    But by continuing in force all the powers and privileges conferred by former laws, and re-enacted, supplied or repealed by the revised charter, it retained the powers conferred in the Act of 1869, Pamph. L. 1168, "to purchase the right of any or all of the various chartered road companies lying or being within the corporate limits of said city, upon such terms as may be agreed upon between councils and said road companies."    In *pari materia* with this power, is that conferred by the Act of May 13th 1871, Pamph. L. 818, enabling the city to appraise and take, at the valuation, so much of any turnpike or plank-road as lies within the limits of the city, that the same be free from tolls, and on payment of the valuation may pass under the control of the city as a street thereof, and all toll-houses be removed out of the city limits.    Nothing has been done by the city under these acts, but the acts themselves are important, not merely as exhibiting the special power conferred but as interpreting the revised charter, and the Act of April 1st 1870, Pamph. L. 751, "relative to streets in the city of Allegheny," for the plank-road being private property, with the right to take toll, protected by a charter, and not a public street in any proper sense; and the power to purchase or to condemn it being essentially a different power from that to improve a public street, the laws relative to the improvement of streets cannot be applied to the plank-road.    But apart from this argument, which in itself is sufficient, the language of the Act of 1870 does not apply to a plank-road.    By the first section the city is authorized "to lay out and open new streets, lanes and alleys in said city, and to widen, straighten and to extend any street, lanes or alleys of said city, and to levy and collect damages done to property thereby, by an assessment upon the property benefited by any such improvement."    It is needless to say that this provision has no relation to special corporation toll-roads.    Then we come to the sixth section, for the improvement of the streets of the city; it authorizes the council "to cause to be graded, re-graded, paved, re-paved, or

[Wilson *v.* Allegheny City.]

macadamized any public street, lane or alley, or any parts thereof, which is now or which may be hereafter laid out or opened in said city, or which may be in whole or in part boundaries of said city, and to have the same set with curbstone, and the foot or sidewalks paved; and the said councils are hereby authorized to levy and collect the cost and expenses of grading, paving and macadamizing from the owners of property bounding or abutting on said streets, lanes or alleys, or parts thereof, thus improved, by an assessment of an equal sum per foot front of said property." It must be noticed that this power to assess the cost on abutting owners is confined to the "said streets," the same only which the city is empowered to improve. If there be no power to improve, there is none to assess. Now it is obvious that the streets authorized to be improved are those of the city itself, over which it has jurisdiction and control, or in the language of the act, "which are now, or which may be hereafter laid out and opened in said city." This language applies to public streets, not private toll-roads. That the city had no power or control over this chartered plank-road, is conceded by the very contract of the city with the plank-road company, and the admitted necessity of obtaining the company's consent to interfere with its roadway. If the power contained in the Act of 1870 extended to this plank-road, it could be exercised *in invitum*, and consent was not necessary; but the fact that it was the roadway of a private corporation, protected by a state charter, which is a contract, at once took it out of the description in the Act of 1870, that is to say, a public street, lane or alley, which is now or hereafter may be "laid out and opened in said city." If then, as is perfectly plain, the plank-road did not fall within the term "public street," used in the Act of 1870, it is equally clear that the property adjoining it is outside of the power of assessment, which we have seen, is confined to the public streets which the city is authorized to improve; and if the municipal power does not apply no element of contract can be injected into it to give it vigor. It was well said by the learned judge below in his charge: "But if the city had no legal right under the Acts of Assembly to grade this portion of the plank-road and assess the property abutting thereon with the cost, I cannot see that such request, on part of defendant, would give the city a right to file a lien therefor. This is a sci. fa. on a municipal lien, and must be sustained by an Act of Assembly authorizing it. The defendant might be liable to the city in an action of assumpsit, and yet the city might not have the right to enforce the collection of her claim by a municipal lien." This view is sound, yet when the learned judge adopted the suggestion, that the city, having acted under a contract with the plank-road company, and graded its roadway, could then turn round and collect the cost from the property abutting, he evidently overlooked the fact that a mere

contract right to grade does not rest on the basis of municipal authority, and this plank-road being no street of the city, the municipal power did not exist, either to grade it or to collect the the cost of doing so.

An argument in support of the power is made to arise out of the supposed benefit to the property of the defendant. But liens of this kind rest on the law alone. The equity was the reason for making the law, but does not stand in the place of the law. Without a law there can be no lien. A municipal lien is an adverse right given by the law against the will of the citizen, and, unless plainly given, cannot take from him his property or his money. It is also to be noticed that the analogy is wanting in material respects, which would liken a plank-road to a city street. The Plank-road Company has but an easement in the land, under the Act of 1849, and on abandoning its road or yielding up its charter, the land reverts to the owner unencumbered by the easement. The city cannot prevent this, and cannot assert authority over it as a highway, unless she had purchased it under the Act of 1869, or condemned and paid for it under the Act of 1871. Then the right of the company to take toll continuing, it bears no analogy to a public street. The testimony shows that the defendant's property lies between two toll-gates, one, perhaps both, in the city, and that he pays his toll quarterly. Now one of the benefits, for which the law assesses the cost on the owner of the adjoining property, is the free use of the street it opens and improves for him. But here he must pay the same toll as before, and has no right to the free use of the plank-road. Nor is it in the power of the city to secure to him this free use, unless she purchases, or condemns and pays for the plank-road. The citizen does not obtain in such case the benefit which lies at the very root of the power to tax him. Another difference lies in the fact that the plank-road is governed by different laws and regulations from those in regard to the streets of the city. Offences against the Plank-road Company are punished under the General Plank-road Law of 1849. For example, the defendant cannot, contrary to the 19th. section, pass through any private gates or bars, or along or over private grounds near to a toll-gate, with intent to avoid payment of toll, under a penalty of ten dollars. It would be a serious question whether the city, without purchasing or taking the plank-road, could run a street into the plank-road near to a toll-gate, to divert the tolls.

The argument that police and health powers, the taxing powers and the like, may be exerted over this plank-road, and the abutting property, evidently does not touch the question before us. Here the general jurisdiction of the city is extended over this territory, and general municipal powers may be exercised for the general welfare. In this aspect, the Plank-road Company stands in the

relation of a private citizen, and must conform to laws made for the public good.   But the enforcement of a specific lien for street improvement stands on the special authority conferred, and this, we have seen, does not comprehend a private company's chartered toll-road.   In no proper sense, therefore, can this plank-road be viewed as a public street, subject to the power to widen, straighten, improve, repair, macadamize, and curb it, and to the power of collecting the cost of so doing from the abutting property.   Hence the assessment in this case was illegal and void.

Judgment reversed.