## City of Lancaster v. Brown et al.

Harry L. Laub, City Solicitor, for plaintiff.

W. Hensel Brown, for defendants.

LANDIS, P. J., July 7, 1928.—The defendants are the owners of certain land fronting on President Avenue, in the said City of Lancaster, there being on the western side of the said avenue 444 feet 3 inches and along the eastern side thereof 484 feet 3 inches. Included in the said measurements is a certain street, 66 feet wide, on each side, which is laid out on the city plan of the said City of Lancaster, but is not yet opened. This street is called West Frederick Street. The City of Lancaster has constructed water-mains along said President Avenue in front of the said land, and has rendered to the defendants a bill for $2 per foot for all the land owned by them on both sides of said avenue, including that portion which will be occupied by West Frederick Street. The defendants are willing to pay an assessment on their land at the rate fixed, except on that portion which is embraced within West Frederick Street, namely, 66 feet on each side of President Avenue. They contend that, as West Frederick Street on the city plan covers this 132 feet of land, the city has no right to make an assessment upon it.

The assessment of property for municipal improvements is an exercise of the taxing powers of the State, delegated to the municipality: Olive Cemetery Co. v. Philadelphia, 93 Pa. 129. Municipal assessments rest upon statute alone, and, where not based upon express legislative authority, cannot be sustained upon any theory of special benefit to the property assessed: Wilson v.

Allegheny City, 79 Pa. 272. In Penn Iron Co., Ltd., *v.* City of Lancaster, 25 Pa. Superior Ct. 478, it is said: "While it is no part of the ordinary and necessary duties of a municipal corporation to supply its citizens with gas and water, it is, nevertheless, true that it may lawfully do so. Such contracts are not made by a municipal corporation by virtue of its powers of legal sovereignty. . . . If the power is granted to a borough or city, it is a special private franchise, and may be for the emolument and advantage of the city and for the public good; but when such a corporation engages in things not public in their nature, it acts as a private individual, no longer legislates but contracts, and is as much bound by its engagements as a natural person."

By the Act of March 21, 1836, § 2, P. L. 134, it was enacted, "that for the purpose of introducing into the City of Lancaster a sufficient supply of fresh and pure water, the mayor, aldermen and citizens of said city be and they are hereby authorized and empowered to purchase and hold, in fee simple, or for any less estate, any water power or powers near or convenient to the said city, or any lands, tenements or hereditaments to which any water power or powers may be appurtenant, with full power the same, or any part or parts thereof, to grant, bargain, sell, alien, convey, mortgage, pledge, charge, encumber and demise and dispose of at their will and pleasure." The 7th section provided that "the said mayor, aldermen and citizens of Lancaster, in select and common councils assembled, shall have full power and authority to pass, ordain and enact all laws and ordinances necessary to enable them to convey the said water through the city in all directions, and to fix hydrants or fire-plugs wheresoever they may deem proper, and to fix and determine the uniform rates or prices to be paid by the citizens for the use of the said waters. . . ."

By section 2 of the Act of April 1, 1837, P. L. 125, it was enacted that "the mayor, aldermen and citizens of Lancaster, in select and common councils assembled, in addition to the powers they already have, shall have full power and authority to lay, assess, levy and collect a tax, to be called 'the water tax,' which tax shall be laid and assessed upon, and levied and collected in the manner that other taxes are laid, assessed, levied and collected, from all lots whereon any dwelling-house, warehouse, stables, or any other improvements whatever, are now or may hereafter be erected, situated along or within one square each way, on both sides of any street or streets through which pipes are, or hereafter may be, laid for conducting the water from the water-works in the said city for the use of the same: Provided, that the said tax shall not be as high by one-half on property in the streets through which the pipes are not laid as in those in which they are laid. . . ."

In no special acts of assembly applicable to the supplying of water to the citizens of Lancaster is there any provision where the councils were authorized to lay water-mains and levy the cost thereof against the property fronting on the streets upon which said water-mains are laid. The city at that time, however, was under a special charter, and was not then, as it is now, under the general law which provides for the government of cities of the third class.

The Act of May 23, 1889, P. L. 277, provided for the incorporation and government of cities of the third class. By section 2, article XII, of that act it was provided that "any city which now has the title to any water, gas or electric light works by conveyances to the same in its corporate name, or which may hereafter erect or purchase water, gas or electric light works under the provisions of this act, are hereby empowered to create a department to be called the water and lighting department, and for the organiza-

tion and government of the same the councils are hereby authorized and empowered to divide the city into three districts for the election of a board of commissioners. . . ." By section 5 of the same article it was provided that "it shall be the duty of the board to take charge of the water and lighting department so created as aforesaid. . . . They shall purchase such materials and supplies as may be required for keeping the works in good repair, and have charge and control of all constructions, repairs, enlargements and extensions of the works, and shall conduct and manage the affairs and business of the department in accordance with law and the directions of the city councils." By subsequent sections, when extensions of main-pipes were to be made through any streets of the city, a list of all owners of houses, lots and buildings on each side of the streets through which said pipes were extended was directed to be made, and the owners were to be charged at such rate per foot as city councils might by ordinance fix; that the charges should be called frontage water tax and should be collected and recovered in the manner provided in the act for the recovery of municipal liens; and that whenever any pipes for the conveyance of water should be laid in any of the streets or highways within such city, the owners of the ground in front of which the same should be laid should pay for the expense thereof such sum for each foot of the front of their ground upon said streets as the city councils might by ordinance direct. This act was followed by the Act of June 27, 1913, P. L. 568, wherein section 1 of article VII declared that "the executive and administrative powers, authority and duties of every city of the third class shall be distributed into and among five departments, as follows: 1. Department of Public Affairs. 2. Department of Accounts and Finance. 3. Department of Public Safety. 4. Department of Streets and Public Improvements. 5. Department of Parks and Public Property."

In Com. v. Elbert, 244 Pa. 535, it was decided that "the effect of the Act of June 27, 1913, P. L. 568, is to empower the council of third class cities, where the title to the water-works therein located is not in the name of the commissioners of water-works, by ordinance to supersede the board of water commissioners and take into its own hands the administration of the affairs previously committed to that body." See, also, Central I. & S. Co. v. Harrisburg, 271 Pa. 340.

It would, therefore, seem that the Councils of the City of Lancaster had the right to take over the full management of the water-works owned by the city by reason of the purchases made under the local acts. In pursuance of this authority, the councils adopted the Ordinance of April 10, 1926, which provided that "whenever any water-main or mains shall be extended in any streets, alleys or highways within the limits of the City of Lancaster, Pennsylvania, a front-foot assessment shall be levied by the bureau of water upon all properties fronting upon the said streets, alleys or highways, at the rate of $1.60 per foot on each side of the said street, alley or highway in which said main is laid or extended: Provided, however, that on any street, alley or highway in which it is impossible or impracticable to lay said main in the centre of said street, the Superintendent of the Department of Public Safety may direct mains to be laid on both sides of said street at the curbs, in which case the assessment per front foot shall be $2. . . ." By section 2, the Superintendent of the Department of Public Safety was directed to "levy, or cause to be levied, the water frontage assessment for the installation of said main or mains and certify the same to the City Treasurer;" and section 3 directed that "in all corner lots an allowance shall be made of one-third the length of their front, but such allowance shall be always and only on the street or high-

way having the longest front, and in case both fronts are of equal dimensions, the allowance shall be made in the street in which the pipes shall be laid, but in no case shall the allowance exceed 60 feet on any corner lot."

It is certainly the theory of the law that the assessments shall be levied because of the supposed benefit which will be derived by the property owner in front of whose lot the pipes are laid. But in the present case, though the paper title to the land fronting upon President Avenue may still be in the defendants, yet, as a matter of fact, the city has laid down in its city plan West Frederick Street over this land. No improvements can be there made by the defendants except at their own risk, and whenever the street is opened, the defendants will only receive as compensation the value of the land without any improvements. A city has no right to levy an assessment against property owners whose lots face upon unopened streets. In Coxe v. Philadelphia, 47 Pa. 9, it was decided that, in the absence of special provisions, the acts authorizing local assessments for municipal improvements contemplate the improvement of regularly opened streets only, and, therefore, do not authorize the improvement of a street which has been merely laid out upon the city plan; and in Philadelphia v. Baird, 1 W. N. C. 126, that a municipal lien cannot be filed for water-pipe laid in a private place which has never been dedicated to the public. See, also, Harrisburg v. Brightbill, 6 Dist. R. 438; Park Avenue Sewers, 169 Pa. 433. In Kilcullen v. Webster, 260 Pa. 263, the court held that, though laid out, it is not a street within the meaning of the acts authorizing the construction of sewers in the streets of the city at the expense of the owners of property fronting thereon until it has been opened by authority of law. It seems to us that the same principle should apply in a case like the one we are now considering. This street has, to all intents and purposes, been taken by the city; at least, to such an extent as to prevent it from levying and collecting such an assessment.

We are of the opinion that judgment in this case should be entered in favor of the defendants, and this is accordingly done.

Judgment on the case stated for the defendants.

From George Ross Eshleman, Lancaster, Pa.