# LARIMER & L. ST. RY. CO. v. LARIMER ST. RY. CO.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued June 4, 1890*—Decided October 6, 1890.

[To be reported.]

'137   533
.160   290
160   296

137   533
166   175

137   533
167   124

137   533
e206   ³ 44
L206   ³ 46

137   533
f219   ²568
219   ³637

1. Although the unauthorized occupation of a public street by a railway track may be regarded as a nuisance, per se, which will be enjoined, an injunction against it will not be granted at the suit of a private citizen, or a corporation, unless the plaintiff can make out a case of special damage.

2. Under § 9, article XVII. of the constitution, and § 15, act of May 14, 1889, P. L. 211, the consent of a city to the construction of a street railway upon its highways, is a condition precedent thereto, and without it a company incorporated under the act of 1889 has no right, present, or prospective, to occupy streets for that purpose.

3. Wherefore, such a company, not having obtained such consent, has no standing by a bill for an injunction to question the right of another company, subsequently incorporated, to occupy for its railway streets covered by the prior charter; having itself no right to occupy such streets, the older company cannot be said to suffer special damage.

4. If a city ordinance, specially authorizing a particular street-railway company by name to occupy certain streets, is invalid as a special grant to said company, it is absolutely void; it cannot be given a general effect, so as to enure to the benefit of another company having a prior charter for the streets named.

5. Whether by § 7, article III., of the constitution, or by § 52, act of May 16, 1889, P. L. 228, relating to streets and sewers in cities of the second class, the councils of such a city are precluded from passing a special ordinance granting consent to the construction of a street railway by a particular company, incorporated under act of May 14, 1889, P. L. 211, not decided.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 113 October Term 1890, Sup. Ct.; court below, No. 722 April Term 1890, C. P. No. 2.

On March 29, 1890, the Larimer & Lincoln Street Railway Company filed a bill in equity against the Larimer Street Rail-

---

* Heard, by advancement, in the Middle District.

way Company, the Duquesne Traction Company, and the city of Pittsburgh. The bill averred, in substance, that the plaintiff company was incorporated on August 14, 1889, under the act of May 14, 1889, P. L. 211, with authority to construct a street railway upon certain specified streets in the city of Pittsburgh; that the Larimer Street Railway Company, one of the defendants, pretended to be a company incorporated under the same act on November 20, 1889, to build a street railway upon certain streets in part the same that were covered by the plaintiff's charter; that in violation of the provisions of § 52, act of May 16, 1889, P. L. 228, relating to streets in cities of the second class, and requiring that any authority granted by councils to any person or corporation to use and occupy any street should be expressed by general ordinance, the councils of said city, which was a city of the second class, granted to said Larimer Street Railway Company on December 13, 1889, by special ordinance, the right to construct a street railway upon the said streets covered by the prior charter of the plaintiff, and again, by special ordinances approved February 28, 1890, said councils granted the right to construct a street railway upon said streets to the Larimer Street Railway Company and to the Duquesne Traction Company as its lessee; that the said city, by a general ordinance approved February 25, 1890, provided a system of just and reasonable regulations for the construction and operation of street railways within its limits, with which the plaintiff intended to comply, and the defendants threatened to invade and interfere with the rights of the plaintiff, etc. The prayers of the bill were, in substance, for a decree that the plaintiff had the right under its charter to construct and operate a street railway upon the streets named therein, and that the defendants, the Larimer Street Railway Company and the Duquesne Traction Company, had no such right; that the powers of the city councils, under the act of May 14, 1889, P. L. 211, were those of regulation, and not of prohibition or of special legislation in favor of one company against another; and that the ordinances professing to grant said defendant companies the right to occupy said streets were invalid, because special and not general ordinances, or, that they should be taken to be the requisite consent for the occupation of said streets by the plaintiff; for preliminary and final

Opinion of Court below.

injunctions restraining the defendant companies from construct-
ing a street railway upon any of the streets named in the
plaintiff's charter; for preliminary and final injunctions re-
straining the city of Pittsburgh from interfering with the con-
struction of the plaintiff's railway upon said streets, and for
general relief.

Upon the hearing of a motion for a preliminary injunction
against the defendants, the defendants filed answers and affi-
davits denying the right of the plaintiff to construct a railway
upon the streets in controversy, for the reason that it had not
obtained the consent of the city councils thereto, and setting
forth that said councils, exercising a discretion as to what
would, in their opinion, be for the best interests of the city and
its people, had refused, by formal action, an application of the
plaintiff for consent to the construction of its proposed railway,
and assented by ordinance to the construction on said streets
of a railway under the charter of the Larimer Street Railway
Company.

On May 19, 1890, the court, WHITE, P. J., refused the pre-
liminary injunction prayed for, filing the following opinion:

In the three suits, there are four railway companies plaintiff,
and four railway companies defendant, besides the city of
Pittsburgh, but the controversy is really between two railway
companies, the Pittsburgh Traction Co., representing or con-
trolling the other plaintiff companies, and the Duquesne Trac-
tion Co., representing or controlling the other defendant
companies.   The Pittsburgh Traction Co. is a cable line, start-
ing at Liberty street and Fifth avenue, up Fifth avenue, and
running out toward the East End.   The Duquesne Traction
Co. proposes starting at Wood or Market street, and up Forbes
street, running out toward the East End, nearly parallel with
the other, thus making it a rival or competing line.   Both are
reaching out by their branches or connections for the immense
travel of the eastern part of the city, as far out as Wilkinsburg.

Although there were numerous affidavits filed at the time of
the argument, few of them were read or referred to in the ar-
gument.   The argument was confined to questions of law aris-
ing from the face of the charters, the acts of assembly and the
ordinances of the city, stated in the bills and admitted in the
answers.

Opinion of Court below.

The plaintiff companies have the older charters. They applied to the city for its consent to their entering and constructing their railways, but were refused. The defendant companies, against their protest, obtained consent by special ordinances. Although the plaintiff companies cannot enter the city without its consent, and that consent has been refused, yet I think, by virtue of their prior franchise, they have a standing in court to contest any illegal acts of the city, or other companies, which would utterly destroy their franchise rights. The question then, I think, is this : Has the city been guilty of illegal acts in refusing consent to the plaintiffs and granting it to defendants ? In other words, has the city no discretion in the matter,—must it admit the first company chartered, or refuse all?

These companies derive all their powers from the state. But under the constitution and the acts of assembly creating them, they cannot enter the city or move a step inside the city limits, in the exercise of their franchise rights, without the consent of the local authorities ; that is, the city councils. That consent is a condition precedent to the exercise of any franchise right, and was written on the face of their charters when they obtained them. The right to consent or refuse is given to the city by the constitution. It is an absolute, unlimited, unqualified right, which may be exercised arbitrarily, with or without reason, and which the legislature cannot take away, and no court has power to coerce. We cannot, therefore, compel the city, either directly or indirectly, to give consent to the plaintiff companies, and without that consent they cannot lay a rail in the city. The question, then, is narrowed down to this: Are the plaintiffs entitled to injunctions to restrain the defendants from proceeding to lay their tracks, with the consent and under the ordinances of the city?

To this it might be sufficient to reply, that, if the defendants have no lawful authority to lay their tracks, they will acquire thereby no legal right for their continuance; and if hereafter the plaintiffs get the city's consent, they can require the removal of the unlawful structure.

There are no allegations in the bills that the consent of the city was obtained by mistake, fraud, or corruption. But the right of the city to give consent to the defendant companies is denied, and the mode of giving it, by special ordinance, is de-

clared illegal. The proposition on which plaintiffs rely may be thus stated: That the consent of the city can only be given by general ordinance, and then the company having the prior charter has the prior right. As a corollary to this, the defendants, having consent only by a special ordinance, have no consent, and are, therefore, proceeding illegally.

This contention is based on the fifty-second section of the street act of May 16, 1889, P. L. 240, which is in these words:

"No street, lane or alley or any part thereof within the city, shall be entered upon, over or under, used or occupied, by any person or corporation for any purpose, without the authority of councils of the city, expressed by a general ordinance duly passed and approved. And in the event of councils authorizing or permitting any person or corporation to use any street, lane or alley within the city, the councils shall have, and are hereby vested with authority to impose such reasonable regulations with regard to the public convenience and safety as they shall deem necessary. The reasonable regulations imposed shall operate upon and affect all persons and corporations equally and without partiality or discrimination."

That section, no doubt, applies to street railways, as well as all other corporations using or occupying the streets for any purpose, either permanently or temporarily; also, to individuals and firms occupying portions of streets for business or building purposes. The leading and controlling idea is, that all of a class shall stand upon an equality; there shall be no partiality, no favors bestowed, and no limitations, conditions or burdens imposed upon one, not upon all. It has no reference to granting consent to one, or authorizing one to do something which can only be granted to one. That cannot be done by general ordinance, but must be particular or special. That is fairly implied in the second sentence of the section, which refers to "authorizing or permitting" any person or corporation to use any street, etc. A general ordinance prescribes the "regulations" for all street railways in the city. But when new lines are formed and new streets are to be occupied, the consent of the city must be obtained, and that can be obtained only by a special ordinance referring to the company and the streets.

It is strongly urged that to give the city a choice between two companies is a dangerous power which may lead to favor-

itism and corruption.    True, it may, but this is not to be pre-
sumed.    There may be as great evils from denying this choice.
If the company that gets the first charter for a short street can
prevent any other company from getting the city's consent, it
may stop a through or competing line of more rapid transit and
far more advantageous to the public, or demand an exorbitant
price for its charter.    There might be a dozen such companies,
each preëmpting a certain street, important links in a long
through route, and each demanding its price to get out of the
way.    Is the city, and the public, powerless in such a case?
When two or more companies desire to occupy certain streets,
but differing in routes, termini, motive power, etc., the city
ought to have a discretion to accept the one which would be of
the greatest public advantage.

The preliminary injunctions prayed for are refused.


Thereupon the plaintiff took this appeal, specifying that the
court erred :

1. In not enjoining the defendants until final hearing, as
prayed for in the bill.

2. In refusing the plaintiff's motion for a preliminary injunc-
tion.

—At the argument in the Supreme Court, it was agreed be-
tween the parties, through their counsel, by writing filed, that
the argument should be treated as a final hearing upon bill and
answer, and that the Supreme Court should dispose of the case
by a final decree.


*Mr. George Shiras, Jr.,* and *Mr. John G. Johnson* (with
them *Mr. George C. Wilson* and *Mr. Johns McCleave*), for the
appellant :

1. By virtue of its incorporation under the act of May 14,
1889, P. L. 211, the plaintiff company was authorized to con-
struct and operate a railway upon the streets in controversy,
and therefore the subsequent charter of the defendant, the Lari-
mer Street Railway Company, granted under the same act, can-
not authorize it to construct a railway on the streets named in
the plaintiff's charter, as the act does not permit the incorpora-
tion of a company for any purpose except to build and operate a
railway on streets " upon which no track is laid or authorized to

be laid or extended under any existing charter." The defend-
ants contend that because the plaintiff had not obtained the con-
sent of the local authorities to the construction· of its railway,
the laying of the same upon these streets was not authorized
on November 20, 1889. This position assumes that the author-
ity to construct springs from the consent of the municipality;
whereas, it is well settled that the authority for such an occu-
pation of a highway is a franchise which can come only from
the state, and which the municipality cannot confer: Coving-
ton St. Ry. Co. v. Covington, 9 Bush 127; Davis v. New York,
14 N. Y. 506; People v. Kerr, 27 N. Y. 188; Milhau v. Sharp,
27 N. Y. 611 (84 Am. Dec. 314); Stanley v. Davenport, 54
Iowa 463 (37 Am. Rep. 216).

2. The provisions of § 15 of the act of May 14, 1889, that no
street railway shall be constructed without the consent of the
local authorities, is merely a condition attached to the exercise
of the right which the charter confers. The case of railroad
companies contending for the same route is analogous. The
company which has made the first location is the one authorized
to build upon that route, although it may not have obtained the
right of way from a single landowner; and another company,
with a later location, by first obtaining the consent of the land-
owner, cannot defeat the first company's prior right: Davis v.
Railway Co., 114 Pa. 312; New Brighton etc. R. Co.'s App., 105
Pa. 13; Waterbury v. Railroad Co., 54 Barb. 388; Morris etc. R.
Co. v. Blair, 9 N. J. Eq. 635; Railway Co. v. Alling, 99 U. S.
463; Sioux City etc. R. Co. v. Railroad Co., 27 Fed. R. 770;
Titusville etc. R. Co. v. Railroad Co., 12 Phila. 642. In § 12
of the general railroad act of April 4, 1868, P. L. 62, is a similar
provision, requiring consent of the local authorities to the con-
struction of a railroad upon a street; and it has been held that
a location on a public highway is an appropriation, attended
with the same results as a location upon private property:
Pittsb. etc. Ry. Co. v. Commonwealth, 101 Pa. 192. The con-
tention of the defendants would lead to absurd results. It
would authorize the issue of an indefinite number of charters
for the same route, until the state department is notified by
somebody that some company has procured the consent of the
local authorities.

3. The defendant companies cannot construct their road

without the consent of the city, expressed by general ordinance, and such consent they have not procured.; wherefore, their threatened invasion of the plaintiff's route is without authority of law.     According to the defendants' own contention, the city, in consenting to the occupation of a street for a railway track, is exercising a delegated legislative power, and if this be so, it is plain that the power must be exercised subject to the same conditions and limitations that control its exercise by the legislature itself.     As the legislature, by reason of the provisions of § 7, article III. of the constitution, could not pass a special law authorizing the laying of a railroad track, neither can its delegate, the city council, do so: Cooley's Const. Lim., 241; Angell & Ames on Corp., §§ 332, 333; Western Saving F. Soc. v. Philadelphia, 31 Pa. 182; Stuyvesant v. New York, 7 Cow. 606; Hestonville etc. R. Co. v. Philadelphia, 89 Pa. 210; Millvale Bor. v. Railway Co., 131 Pa. 1; Commonwealth v. Harris, 10 W. N. 10; Reimer's App., 100 Pa. 183; Klingler v. Bickel, 117 Pa. 326; 1 Dillon on Mun. Corp., § 322; Mayor of Hudson v. Thorne, 7 Paige 261; Chicago v. Rumpff, 45 Ill. 90 (92 Am. Dec. 196); Slaughter-House Cases, 16 Wall. 36.     The opinion of this court in Baldwin v. Philadelphia, 99 Pa. 164, in so far as it may seem to intimate that no municipal ordinance can be a law within the meaning of the constitutional limitations, goes beyond the necessities of the case.     The ordinance there considered was not an exercise of the city's legislative power, but was simply the embodiment of a contract between the city and its servant respecting compensation.

4. However, all question as to the manner in which the consent is to be given, is closed by § 52 of the street act of May 16, 1889, P. L. 240, which unequivocally enacts that such consent shall be expressed by a general ordinance, and an ordinance authorizing a particular company to occupy a street is special and not general: Weinman v. Railway Co., 118 Pa. 192.     That section includes street railways.     It does not conflict with the constitution and the street-railway act, which do not provide the method nor prescribe the manner in which such consent shall be given; and, in view of its manifest intention to break up the evil of special legislation concerning special rights in highways, it should be interpreted to include the very subjects of legislation which had been, in the past, most productive of that evil.

Arguments.

Having shown that we have a prior charter, authorizing the construction of a railway upon the streets in question, and the right to enter upon those streets for that purpose, so soon as the consent of the city to a construction of a railway thereon is obtained, we have shown enough to maintain.our right to complain in this case. Under the act of June 19, 1871, P. L. 1360, regulating the jurisdiction of the courts in such cases, it is not requisite that the exercise of our franchise should have been interfered with; all that is necessary is that the franchise itself should be " injured or invaded."

5. The act of June 19, 1871, confers upon the court the power to restrain, by injunction against the defendant companies, their exercise of franchises which, as we have shown, have not been conferred upon them: Edgewood R. Co.'s App., 79 Pa. 269; Sterling's App., 111 Pa. 35; Penna. R. Co.'s App., 115 Pa. 514. But we demand also an injunction against any interference by the city with the construction of our road. The consent of the city, attempted to be given to the defendant companies by special ordinances, if not altogether void, enures to the benefit of the plaintiff, as the company authorized by law to construct a railway upon these streets. Part of an ordinance may be declared void and another part valid: Commissioners v. Gas Co., 12 Pa. 318; Kneedler v. Norristown, 100 Pa. 368; Pittsburgh's App., 115 Pa. 4. Councils have consented to the use of the streets in question for railway purposes, but have undertaken by their special act to withhold such consent from the corporation entitled by the grant of the commonwealth, and to give it to a corporation not so entitled. A patent issued by the commonwealth to A, is a good grant by the commonwealth to B, if B were the party entitled: Urket v. Coryell, 5 W. & S. 60. So, in this case, the consent should be read as given to the party entitled, and held void as to the party erroneously named.

*Mr. D. T. Watson* (with him *Mr. John M. Kennedy, Mr. William A. Stone, Mr. S. A. McClung* and *Mr. Charles H. McKee,* for the Larimer Street Railway Company, and *Mr. William C. Moreland,* City Solicitor), for the appellees:

1. It is essential that the plaintiff show some right of property in itself, which is in danger of immediate and irreparable

injury by the threatened action of the defendants : Sparhawk
v. Railway Co., 54 Pa. 421 ; Buck M. Coal Co. v. Coal & Nav.
Co., 50 Pa. 99 ; Cumberland V. Ry. Co.'s App., 62 Pa. 227.
Any doubt as to the existence of such a right resolves itself
against the plaintiff : Commonwealth v. Railroad Co., 27 Pa.
339. The only right of property claimed by the plaintiff,
against these defendants, is the sole right to construct a pas-
senger railway on certain streets, and this claim of right is
denied by the defendants. As it is admitted that the city has
never consented to the construction of such a railway by the
plaintiff, it has no such right : § 9, article XVII., constitution
of Pennsylvania ; § 15, act of May 14, 1889. The exercise of
the discretion to give or withhold such consent, which the city
has, will not be controlled by the courts : Commonwealth v.
Pittsburgh, 34 Pa. 517 ; Grant v. Erie, 69 Pa. 422. The con-
sent is plainly a condition precedent of the plaintiff's right :
Commonwealth v. Railway Co., 52 Pa. 516 ; Musser v. Rail-
way Co., 5 Clark 466 ; Philadelphia v. Railway Co., 3 Gr. 404.
And, having once formally refused consent, the city's power is
exhausted, and it could not now give the consent if it would :
Musser v. Railway Co., 5 Clark 466.

2. We are not unwilling, however, to discuss the right of
the Larimer Street Railway Company, and in support of it we
produce a complete title, viz., letters patent from the state
granting the franchise, and the formal consent of the city to
the construction of the railway, expressed by general ordinance
prescribing regulations, and by the so-called special ordinances.
The plaintiff replies : (*a*) that the city had no power to pass
the special ordinances ; and (*b*) that an exclusive right to these
streets is vested in it, whether the city ever consents to their
occupation by it or not, and (*c*) that they cannot be used by
another company without its consent. If these startling prop-
ositions are unsound, the plaintiff's case necessarily falls. The
provisions in the constitution and in the street railway act of
1889, requiring the consent of the local authorities, are a dis-
tinct limitation upon the power of the company, distinctly
pointing to an application for such consent by each particular
company, and saying in so many words that unless this is pro-
cured the railway shall not be constructed. Until it is pro-
cured, the charter is worthless, and no track is " authorized to

be laid." If § 52 of the street act of May 16, 1889, P. L. 240, bears the construction contended for by the plaintiff, it is unconstitutional, because in conflict with the constitutional requirement that consent must be given to each particular railway company, and because, also, it would be a local law: Weinman v. Railway Co., 118 Pa. 202.

OPINION, MR. JUSTICE CLARK:

The complainants, the Larimer & Lincoln Street Railway Company, were incorporated 14th August, 1889, under the general act of 14th May, 1889, P. L. 211, entitled "An act to provide for the incorporation and government of street-railway companies in this commonwealth." Their articles of association specify the route of their road to be in the city of Pittsburgh, a city of the second class, beginning on Penn Avenue, and covering Collins Avenue, Station street, Larimer Avenue, Shetland street, and Lincoln Avenue; the route being continuous and forming a complete circuit. The capital stock is $18,000, and it is set forth in the affidavit, attached to the articles, that ten per cent of this amount has been paid in, and that it is the intention of the corporators, in good faith, to construct, and to maintain and operate the road. At the time of their incorporation, no track was laid or authorized to be laid or extended on any of the streets named within the route specified under any existing charter.

By the ninth section of the seventeenth article of the constitution, it is provided that "no street-passenger railway shall be constructed within the limits of any city, borough, or township without the consent of its local authorities:" and this provision of the constitution is formally incorporated into the fifteenth section of the act under which the complainants derive their charter. The complainants, although thus regularly incorporated for the purpose of constructing, maintaining and operating a railway on the streets named, have not yet obtained the consent of the local authorities of the city; the authority of councils has not yet been expressed to that effect, either by general or special ordinance, or otherwise.

The Larimer Street Railway Company was incorporated under the same act, on the 20th November, 1889, and the route defined in its articles of association is in part coincident with

the route of the complainants upon Station street, and upon Collins, Larimer, and Shetland Avenues. On the 13th December, 1889, and again on the 28th February, 1890, the local authorities of the city of Pittsburgh, by ordinance having special and particular reference to the Larimer Street Railway Company, gave their consent and granted to that company by name, its successors, lessees, and assigns, the right to enter upon, use, and occupy the streets and avenues mentioned; and the company thereupon undertook and were about to enter on the construction of their road, when this bill was filed, praying for an injunction restraining the Larimer Street Railway Company, and the Duquesne Traction Company, their lessees, from constructing or operating a railway on the streets named, and enjoining the city of Pittsburgh from any and all interference with the complainants, in the construction and operation and maintenance of their road. The prayer for a preliminary injunction in the court below was denied, and it is from that decree the present appeal was entered. At the argument in this court, however, the facts being practically undisputed, the parties agreed in writing that the cause might be considered and disposed of as upon final decree.

The first section of the act of 14th May, 1889, provides " that any number of persons, not less than five, may form a company for the purpose of constructing, maintaining and operating a street railway on any street or highway upon which no track is laid, or authorized to be laid or to be extended under any existing charter, with the privilege of occupying so much of any street, used or authorized to be used, under any existing charter, as is hereinafter provided, for public use in the conveyance of passengers, by any power other than by locomotive ; and for that purpose may make and sign articles of association, in which shall be stated the name of the company, the number of years the same is to continue, the length of such road, as near as may be, the streets and highways upon which the said railway is to be laid and constructed, showing also the circuit of the route, the amount of the capital stock of the company, which shall not be less than six thousand dollars to every mile of road proposed to be constructed, and the number of shares of which said capital stock is to consist," etc.

The appellants' contention is :

First. That as they were incorporated on the 14th of August, 1889, under this act, for the purpose of constructing, maintaining and operating a street railway over the route designated, a street railway was thereby " authorized to be laid " on the streets embraced in that route, within the meaning of the first section of this act of 1889, and that the subsequent charter of the appellees could not, and therefore did not confer any right upon the appellees to occupy the same streets for that purpose.

Second. That, granting the right of the appellees under their charter, they have not in any valid, legal way obtained the consent of the city of Pittsburgh; that the ordinance to that effect being special, and an exclusive privilege or immunity being granted thereby, it is void, under the seventh section of the third article of the constitution. The appellants' contention is, that the ordinance is in conflict with this section of the constitution; that the state cannot grant legislative powers which it does not itself possess. The restrictions upon the legislative power of the state, they say, rest equally upon all the agencies of the government created by the state ; that, as the legislature cannot transcend the powers conferred by the constitution, so a corporation, which exists by express grant of the legislature, is bound by that supreme law which limits the power creating it; and, hence, that all ordinances impairing the obligation of contracts, all ex post facto laws or ordinances, and all by-laws of a corporation, inconsistent with the constitution of the state, or of the United States, are void. Upon the same ground, it is contended that all special enactments of the municipal corporation, granting to any corporation, association or individual, any special or exclusive privilege or immunity or to any corporation, association or individual, the right to lay down a railroad track, is necessarily void, as a special law, and is in conflict with the constitution of the state.

Third. If the ordinance is not held to be void for the reasons stated, it must be construed to have a general effect in favor of the company duly authorized and first entitled under its charter.

It is better, perhaps, in our own view of the case, that we should dispose of the last of the propositions first; for, if the Larimer & Lincoln Street Railway Company have not, in any way, obtained the consent of the city of Pittsburgh to enter

upon these streets, but, on the contrary, that consent has been formally and flatly refused, we cannot see how the complainants have any standing, in this court, to litigate the matters set forth in the bill.  The ordinances of 13th December, 1889, and 28th February, 1890, were in form special to the Larimer Street Railway Company.  They were for this reason either valid or wholly invalid; if valid, they were effective to carry out the purpose intended; if invalid, they were absolutely void.

It is difficult to see how the ordinances in question could enure to the benefit of the appellants.  It cannot be construed as a general ordinance, for that was clearly not the intent of the councils in enacting it; their intent was clearly to the contrary, for the grant was expressly special, and they refused to yield their consent to the appellants.  If these ordinances are void upon constitutional grounds, they are absolutely void, and confer no right upon either of the corporations named therein, or upon any other person or corporation.  The decisions of this court upon cases arising under § 7, article III. of the constitution, have been wholly to this effect: Ayars' App., 122 Pa. 266; Scranton School D.'s App., 113 Pa. 176; Weinman v. Railway Co., 118 Pa. 192.

The cases of Commonwealth v. Harris, 10 W. N. 10, and Reimer's App., 100 Pa. 183, cited by the appellants, relate to the occupancy of the public highways of the city of Philadelphia, by the construction of bay windows under special grant of councils to the particular individual defendant in each of the cases respectively.  The power of the city to make such special grant was claimed to exist under the provisions of the act of April 16, 1838, P. L. (1837–38) 626, whereby it was made lawful for the councils of the city to establish, by ordinance, such rules as they might deem expedient for the better regulation of jut windows, etc., projecting over, under, into, or otherwise occupying the sidewalks, or other portions of the streets, lanes, or alleys of the city.  This court held, however, in affirming the judgments entered in the court below, that whilst the power of councils, by general ordinance, was undoubted, these special grants were unlawful, and therefore void; in neither case was it suggested, or supposed, that the special grant might be construed to have general effect.  In no case has a local or special law been held to have general effect, simply because

the legislative body enacting it had power over the subject only by general law, or because the grant or right should have enured to the benefit of a person different from the person named in the grant.    The effect of such a ruling would be, not only to set aside the plain words of the statute, but wholly to ignore the purpose and intention of the legislature.

If, then, the appellants have not, in any way, obtained the consent of the city of Pittsburgh to enter upon these streets for the construction of their road, what standing have they in a court of equity to test the right of the appellees?    The consent of the city is a condition precedent to the exercise of their rights under the charter; without this, they have no right, present or prospective, to construct their railway upon the highways of the city, for non constat that this consent will ever be given.    It may be that the appellees have no better right ; we will decide that question when it arises, but it is plain the appellants have no standing to raise this question for our consideration.

Although the unauthorized occupation of a public street by a railway track may be regarded as a nuisance per se, which will be enjoined, chancery will not restrain an act, which affects the whole community, at the suit of a private citizen or a corporation, unless the plaintiff can make out a case of special damage : Sparhawk v. Railway Co., 54 Pa. 401 ; and it is difficult to see how the complainants may be said to have suffered special damage, when they have shown no right whatever to the occupancy of the street for the purposes of their incorporation.    The charter gave the company a legal existence, clothed it with corporate power, placing it in a position to undertake the purposes for which it was organized, and to solicit the privilege of entering upon the streets in question to construct their road ; but their right so to do was expressly conditioned upon the action of the councils to that effect.    Until they obtain that right, they cannot be said to suffer any special damage or irreparable injury, which would call for the intervention of equity ; for, as we have said, although the appellees may, perhaps, have no right, it is clear that the complainants have none.    What has been said, therefore, as to the invalidity of the ordinances of 13th of December, 1889, and 28th February, 1890, and as to the application and effect of § 52 of the act of

1889, is wholly irrelevant and without effect in this case; these questions can only arise when they are presented by a proper party. Upon this ground

> The decree of the Common Pleas is affirmed, and the bill dismissed at the cost of the appellant, as per decree entered at the last May term in the Middle District.