# The Providence and Abington Turnpike and Plank Road Company *v.* City of Scranton, Appellant.

### [Marked to be reported.]

*Turnpike companies—Municipalities—Toll gates within city limits.*

A turnpike company, whose road by the extension of municipal limits becomes a portion of a street of a city, may erect toll gates within the limits of the city, and collect tolls thereat.

*Municipalities—Power to contract with turnpike company—Act of May 23, 1874.*

Where a turnpike company maintains a toll gate within the limits of a city the municipality has power to make a contract with the turnpike company whereby the latter agrees to give up its right to take toll within the city and to remove its gate in consideration that the city shall keep the turnpike road within the city limits in repair.

Argued Feb. 27, 1896.   Appeal, No. 127, Jan. T., 1896, by defendant, from judgment of C. P. Lackawanna Co., Sept. T., 1892, No. 722, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.   Affirmed.

Assumpsit on a contract.   Before McPHERSON, J., of the 12th judicial district, specially presiding.

At the trial it appeared that plaintiff and defendant in 1889 entered into a contract by which the former agreed to give up its toll gate within the limits of the city of Scranton in consid-

eration of the city keeping in repair the turnpike road within the built up portion of the city. The city did not comply with its contract, and plaintiff brought suit for the cost of repairs which it alleged it had made upon the road. The jury returned a verdict for $2,200.49. The court reserved defendant's point which was: " That under all the evidence the verdict must be for defendant."

The court subsequently filed the following opinion:

The question reserved at the trial requires us to determine the validity of the contract between the turnpike company and the city. It is argued that the contract is invalid for two reasons: First, it is beyond the city's lawful power; and second, it has no lawful consideration.

The facts are undisputed and are as follows :

The plaintiff company was incorporated by a special act of assembly passed in 1853 (P. L. 363), which gave it the powers and subjected it to the limitations of the general turnpike act of 1849 (P. L. 10). Under the provisions of the 12th and 13th sections of the general act the plaintiff was empowered " to erect and fix such and so many gates upon and across the said road as will be necessary and sufficient to collect from all persons otherwise than on foot the same toll as hereinafter authorized and granted; " and also, " to appoint such and so many toll gatherers as they shall think proper to collect and receive of and from all and every person or persons using the said road the toll and rates hereinafter mentioned."

At the time the company's turnpike was built it lay entirely without the municipal limits of Scranton, which was then a borough. Afterwards, by the act of 1866 (P. L. 103), the city of Scranton was incorporated and its boundaries were extended so as to embrace a certain portion of the plaintiff's road. This portion became a physical part of Market street, but (as is well known) the city acquired only a limited control over the turnpike, and the plaintiff continued to be responsible for its condition and was obliged to maintain it in repair. As population and travel increased in this quarter, and as other streets were opened, it became possible for many travelers to use the turnpike for more than a mile without the payment of toll, and thus to increase the cost of repair without contribution thereto. To

remedy this grievance the company in 1888 or 1889 put up a toll gate upon that portion of its road within the municipal limits. The gate was the cause of much inconvenience and irritation to travelers using the road, many of whom were citizens of Scranton; and in order to end the difficulty by removing the cause, the city and the company entered into the agreement which was offered in evidence. Thereby the company gave up its right to take toll within the city and removed the gate; in consideration whereof the city undertook to keep the road in repair and to perform the duties of the company respecting this particular portion of its turnpike. If the contract was within the municipal power, and if it was made upon lawful consideration, it ought to be enforced.

We may remark in passing that, if it be assumed that the removal of toll gates from the streets of a city is a desirable act where the power of removal exists, the defendant has made an excellent bargain in this particular case. It pays nothing for the turnpike company's franchise of taking toll, but simply agrees to do what the law would oblige it to do whenever it saw fit to buy the company's privilege. But of course the goodness or badness of the bargain is not the test of its validity. If the contract is one which the city had power to make, and if a valid consideration was given, we need not consider the prudence or imprudence of the transaction.

We regard the contract as not only not beyond the municipal power, but as upon a subject which is directly committed to municipal control. The agreement is intended to promote the convenience, and to lessen the expense, of citizens in traveling over a highway within the city limits; and this is a subject clearly under municipal supervision, although the highway may be a toll road upon which the city has only a limited right to lay its hand without the agreement of the lawful owner. Ease and convenience and cheapness of transit are subjects which a city is bound to advance; and even without express statutory authority we think that city authorities have implied power to make a contract which will result in removing from one of. its highways the inconvenience and annoyance of a toll gate and toll collector. No express power in this direction is given to the city of Scranton by its charter or by subsequent legislation; but it is not without value to observe that section 52 of

the cities act of 1874 (P. L. 267) (which the city accepted in 1877) gave to the defendant a power with regard to turnpikes or plank roads within its limits which might easily be construed to have a distinct bearing upon the question now before us. The section provides : " That whenever it shall become necessary in the progress of the building improvements of any of said cities to grade, curb, bridge, culvert or pave any of the highways used as turnpikes or plank roads, it shall be lawful for councils to agree for the relinquishment of such parts thereof as may be so required from time to time, and if the parties cannot agree, to obtain a jury of view upon such parts to assess the damage the company owning the franchise may sustain by the city using the same for such purposes." It is quite true that it was not expressly proved in the present case that it has become necessary in the progress of the building improvements of the city of Scranton to grade, curb, bridge, culvert or pave this particular highway ; but it may reasonably be assumed that the city councils regarded the progress of the city's development in this quarter as obstructed by the taking of toll ; and if this assumption is true the contract we are now considering would be fairly authorized by the evident purpose and spirit of the section above quoted.

But, aside from this view upon which it is not necessary to insist, we repeat that the subject is one which lies within the general jurisdiction of councils, and that even without express legislative authority to make such contracts the power is necessarily implied by the nature and extent of the control which the city is bound to exercise over the methods and means of transit within its limits.

The second question is whether or not there was a lawful consideration for the contract. The turnpike company surrendered a right which during the year before had produced nearly $1,000, and this would certainly furnish a good consideration if it has a lawful right to erect the gate within the city. This right is denied, and we are urged to decide that, as a gate has never been erected at this point, the company's right to fix the places of taking toll had been exhausted. From this point of view the existence of the gate was a nuisance, and therefore the relinquishment of the claim to maintain it did not afford a sufficient consideration for the contract. We are unable to sustain

this position. It seems to us the act of 1849, already quoted, gave to the company a discretion to erect as many gates, and at such places, and at such times, as it might believe to be necessary, subject only to the restriction that it might not collect more tolls than prescribed by the statute. Where the gates were to be, and when they should be erected, were matters committed to the discretion of the company. If a change of circumstances made a particular gate useless or called for the erection of a new gate at a different point, the company's right continued to exist and might be exercised (as it was exercised in this case) within the limits of the city as well as without its limits.

The case of Stormfeltz v. Manor Turnpike Co., 13 Pa. 555, is not in conflict with this view. That case admits the power of the legislature to permit a turnpike gate to be erected on a city street, but decided that the permission must appear by express enactment and could not be implied. It was further held that the gate then in controversy was not authorized by the particular statute to which the company appealed, and therefore that the company had no right to maintain it. Nothing more is decided, and if any doubt could remain as to the scope of the decision it would be removed by comparing it with the recent opinion in Conestoga Turnpike v. Lancaster City, 151 Pa. 543.

The other cases to which our attention has been directed do not afford any light upon the point now being considered. Wilson v. Allegheny City, 79 Pa. 272, simply decides that if a city agrees to grade the road of a turnpike company within the municipal limits, it cannot assess the cost of grading upon the abutting property holders; the reason being, because the turnpike road is not a "street" of the city in the sense in which that word is used in the statutes relating to Allegheny City; and because municipal liens are only given therein for improvements of the public "streets." This decision was followed in Breed v. Allegheny City, 85 Pa. 214; and both cases are obviously concerned with a different subject. Other decisions discuss the general powers and limitations of municipalities, and do not appear to have any important bearing upon the present controversy. Some of them decided in effect, what scarcely needs to be decided—that if a city contracts upon a subject beyond its power the contract is void. The important question in this class of cases always is, whether the particular contract

under consideration *is* beyond the city's power.    When that is decided, all is decided; and having determined that question in favor of the plaintiff, we will not prolong the discussion.

The precise points ruled in this opinion have apparently not arisen heretofore in Pennsylvania, and have scarcely been considered elsewhere; but some help upon the general subject may be found in Elliott on Roads and Streets, chapter IV. page 53, et. seq., and in a few of the cases cited in the notes.

We direct judgment to be entered for the plaintiff upon the verdict.

*Error assigned* was entry of judgment as above.

*S. B. Price*, for appellant.—A city cannot improve a turnpike road over which the company for its entire length exercises its franchise for the collection of tolls, and defray the expenses from moneys obtained by taxes imposed upon its citizens: State v. New Brunswick, 32 N. J. Law, 548; Wilson v. Allegheny City, 79 Pa. 272; Breed v. Allegheny City, 85 Pa. 214; Elliott on Streets and Roads, note 1, p. 6.

The turnpike company exhausted its right to establish gates prior to 1889: 27 Am. & Eng. Ency. of Law, 333; Griffen v. House, 18 Johnson, N. Y. 397; Snell v. Chicago, 133 Ill. 413; Fowler v. Pratt, 11 Vt. 369; Cheshire Turnpike Co. v. Stevens, 10 N. H. 133; State v. New Brunswick, 32 N. J. 548; Elliott on Roads and Streets, 58; Stormfeltz v. Manor Turnpike Co., 13 Pa. 555; Conestoga & B. S. V. T. Rd. Co. v. Lancaster, 151 Pa. 543; 1 Beach on Public Corporations, 609; Sharpless v. Phila., 21 Pa. 147; Harvey v. Lloyd, 3 Pa. 331; Com. v. McWilliams, 11 Pa. 63; Wilkes-Barre City Hospital v. Luzerne Co., 84 Pa. 55.

*W. W. Watson, W. S. Diehl* with him, for appellee.—Where discretionary authority is granted a turnpike company to establish toll gates, it may establish them at such places on the line of its road as it may deem proper, and increase the number: Cheshire Turnpike Co. v. Stevens, 10 N. H. 133; Farmers Turnpike Co. v. Coventry, 10 Johnson, 389; Mallory v. Austin, 7 Barb. 629; Stuart v. Rich, 1 Caines, 182; People v. Kingston etc. Turnpike Co., 23 Wend. 193.

Neither the constitution of Pennsylvania nor any statute of the state was violated in the making of this agreement. The city got all the privilege it could have obtained under the act of 1874, and this without paying a cent for it.

OPINION BY MR. JUSTICE GREEN, May 4, 1896:

The purpose of the contract between the plaintiff and defendant in this case was to relieve the inhabitants of the city from the burden and the annoyance and inconvenience of having a toll gate, and paying toll, over the plaintiff's turnpike road within the city. The portion of the road lying within the city limits became a part of Market street under the city act of incorporation of 1866, but in consequence of the turnpike having been built long before the incorporation of the city, the road was the private property of the plaintiff which was endowed with the right to erect gates and collect tolls for its use over its whole length. The road, therefore, could not be treated as a street of the city and was not subject to the ordinary municipal control as a street. The right of a turnpike company to erect and maintain toll gates within the city limits where the charter, and the act of 1849, confer a general authority of that character, is fully sustained in the opinion of this court in the case of Conestoga Turnpike v. Lancaster, 151 Pa. 543. The great desirability of getting rid of toll gates within the city limits is fully demonstrated in the opinion in the case of Stormfeltz v. The Manor Turnpike Company, 13 Pa. 555, where COULTER, J., says, " The constant passage of drays, wagons, carts and other vehicles from one part of a city to another, in pursuit of the business, trade, agriculture and commerce of the country requires that the streets be open. In many places the stoppage to pay tolls would block up and stop the streets, and as the toll gatherer would have to seek shelter from the vicissitudes of the weather, a barrier would at times be interposed with no person at hand to open it."

Having then before us the fact that the turnpike company might lawfully maintain a toll gate in the city, and, on the other hand, the knowledge that such a gate is a serious injury to the business of the city and a great annoyance to the citizens, the question arises, is the city powerless, when it proceeds by means of a friendly contract with the turnpike company to

remove so great an obstruction to its business and to the convenience of its people? We do not think so. It is conceded, and is undoubtedly true, that the defendant as one of the cities of the commonwealth could acquire by purchase, or by condemnatory proceedings, the rights and franchises of the plaintiff, and the municipal corporations act of May 23, 1874, P. L. 267, Bright. Purd. 1261, pl. 179, accepted by the city of Scranton in 1877,. does confer the very power essential for the purposes of the present case. The language of section 52 of that act is as follows : " That whenever it shall become necessary in the progress of the building improvements of any of said cities to grade, curb, bridge, culvert or pave any of the highways used as turnpikes or plank roads, it shall be lawful for councils to agree for the relinquishment of such parts thereof as may be so required from time to time, and if the parties cannot agree, to obtain a jury of view upon such parts to assess the damage the company owning the franchise may sustain by the city using the same for such purposes." As a matter of course the necessity of using this power is to be determined by the city councils, the grading and paving of the turnpike part of the street clearly embrace the keeping it in repair, and the general powers of councils over the streets and highways within their jurisdiction comprehend all the authority exercised in this instance. Moreover as a mere matter of logical reasoning, if the city may buy or take the whole of the defendant's road and its franchise, does it not certainly follow that they may by any form of contract which has the consent of the turnpike company acquire the right to use and control a part of the road? If the company may part with its right over the road by a sale to the city, why may it not part with its right for any other form of consideration?

That is a matter for its own determination. Whether the consideration be much or little, wise or unwise, in the interest of either party, concerns no one but the parties themselves ; it cannot affect the validity of the agreement. It might not, in the interest of the company, be advantageous or a matter of pecuniary profit to give up an income of $1,200 a year by surrendering their gate, but that is a matter for their own consideration. If they are satisfied no one else can complain, and surely the courts would not coerce their action in this regard

by insisting that they must take some larger emolument merely to give validity to their corporate action in parting with a portion of their road. In point of fact they escape the expense of constant repair which is by no means a trifling matter. On the side of the city the advantage is too obvious to require discussion. The mere relief from the annoyance and burden of having a toll gate on one of their streets is more than ample, when viewed simply as a valuable consideration. And the consequent duty to keep in repair the portion of the road which was a turnpike, but which was also a city street, follows by inevitable inference which did not require the help of a contract engagement. This repair should be done by the city, because, after the contract, the subject of it was no longer a private turnpike, but was exclusively a city street. Hence in no aspect of the case can we regard this transaction as a mere engagement by the city to keep in repair a private turnpike. These considerations eliminate the chief contentions of the learned counsel for the appellant, and also the authorities upon which he relies.

Wilson v. Allegheny City, 79 Pa. 272, has no application because the question there decided, to wit, the right of assessment upon abutting owners, does not arise on this record, and the road continued to be the private turnpike road of the company without any removal of its gates as well after as before the contract between the company and the city. That in the present case there was full consideration moving to the city is already manifest. The other contentions advanced for the appellant are without merit and need not be discussed in detail. We fully agree with the learned judge of the court below in the reasoning and conclusions expressed in his clear and forcible opinion, and might well have affirmed the judgment on that alone. We have thought that some expression of our own might be desirable as the question is perhaps of first impression and of some importance.

Judgment affirmed.