## Dalton Street Railway Company *v.* Scranton, Appellant.

Argued January 25, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*A. A. Vosburg,* of *Vosburg & Vosburg,* with him *Jerome I. Myers,* City Solicitor, and *John R. Edwards,* Associate City Solicitor, for appellant.

*J. H. Price,* with him *C. B. Price, O'Malley, Hill Harris & Harris,* and *David J. Reedy,* for appellee.

OPINION BY MR. JUSTICE DREW, March 22, 1937:

The Dalton Street Railway Company brought this action of trespass against the City of Scranton to recover damages for the destruction of its tracks, poles, wires and other property in Scranton. A verdict was directed for plaintiff, but the amount of the damages was left for the jury's determination; a verdict in favor of plaintiff without damages was returned. The latter's motion for a new trial was granted and defendant has appealed.

The Providence and Abington Turnpike and Plank Road Company, hereinafter called the Turnpike Company, was founded in 1853, and its road was laid out and constructed. In 1866, the City of Scranton was chartered. In 1889, the Turnpike Company surrendered its right to maintain a toll gate south of Leggett's Creek (within the city limits) in consideration of the city's promise to keep the "road between the stone bridge across Leggett's Creek and the Square in Providence . . . in as good order and repair as the said Company is now bound by law to keep the same." The road so taken over is now West Market Street in Scranton. Because of the city's failure to make or pay for repairs under this contract, the Turnpike Company brought an action against the City of Scranton, reported on appeal in *Providence & Abington Turnpike & Plank Road Company v. City of Scranton,* 175 Pa. 290. We there declared inter alia, that "after the contract, the subject of it was no longer a private turnpike, but was exclusively a city street. Hence in no aspect of the case can we regard this transaction as a mere engagement by the city to keep in repair a private turnpike."

In 1905, the City of Scranton granted a franchise to the Northern Electric Street Railway Company, its successors and assigns, to operate a railway on West Market Street, provided, inter alia, that the consent of the Turnpike Company be obtained and the city be released from its obligation to repair imposed by the contract of

1889. All conditions were performed and the agreement of dedication that followed recited that the city was released from the contract of 1889, which was specifically declared to be cancelled. This agreement was accepted by the city.

By a duly recorded agreement dated October 13, 1906, the Turnpike Company leased to the Northern Electric Street Railway Company a right of way for its cars, poles and electrical appliances over, along and across the turnpike in perpetuity. The right was expressly declared therein to inure to the benefit of the successors, assigns and mortgagees of the lessee.

In 1915, the Turnpike Company, the Northern Electric Street Railway Company, and the Dalton Street Railway Company, acting together, executed a deed which purported to give a right of way over part of the turnpike road to the two railway companies. On September 7, 1916, the city accepted a deed from the Turnpike Company which gave to the city "all the remaining portions of the turnpike road. . . . Subject to the rights of way of the Northern Electric Street Railway Company and the Dalton Street Railway Company, their successors, lessees and assigns. . . ." For so doing, the Turnpike Company received $19,000 from the city.

In 1931, the Scranton, Montrose & Binghamton Railroad Company, operating lessee of the Northern Electric and Dalton Street Railway Companies, went into receivership and the appropriate federal court ordered sale of the assets at an upset price if any responsible bidder could be found. It was further ordered that the receivers could discontinue operation of the line in their discretion. Pursuant thereto, the receivers did discontinue operations for four months, and in this interval the mortgage of the Northern Electric Street Railway Company was foreclosed and its rights sold on November 28, 1931, to the attorney for the Dalton Street Railway Company. The attorney took the sheriff's deed in

his own name and transferred the rights thereunder to the Dalton Street Railway Company on March 20, 1932, which then leased the road to the Scranton & Binghamton Traction Company.

However, on October 17, 1931, the City of Scranton by ordinance duly enacted attempted to vacate and annul the franchise of the Northern Electric Street Railway Company upon the ground that it had not complied with the conditions of the original ordinance which required (1) the furnishing of a bond to the city in the sum of $5,000 before construction of the railway; (2) that the Railway Company keep the tracks filled with substantial material, and (3) that service with the city should not be abandoned.

The Dalton Street Railway brought a suit in equity to restrain the city from threatened interference with its right of way. Action on the bill was pending when on July 18, 1932, the city contracted with the Commonwealth, acting through the Secretary of Highways, under the Act of June 22, 1931, P. L. 720, for the reconstruction of West Market Street. The seventh clause of this contract reads as follows: ". . . It is the understanding between the parties hereto that the City will remove all structures within the required right of way for the aforesaid improvement, including facilities of the Northern Electric Street Railway Company, and that the removal thereof shall be completed at such time that no delay will be caused the contractor in the prosecution of the work and, in the event the contractor is delayed due to the failure of the City to compel the removal of such structures, the City shall assume and pay any damages suffered by the contractor due to such delay." On August 24, 1932, the city entered into an agreement with a contractor for construction of part of the highway, incorporating specifications which provided, inter alia, that the contractor should remove and dispose of all trolley overhead facilities within the right of way required for the highway, and that it was "under-

stood that all the materials so removed under this item become the property of the City of Scranton."

On September 20, 1932, city police prevented operation of the railway by erecting wooden barricades; city employees removed the rails. Thereafter, the contractor began work which continued for ten months. During this period, the trolley wires and the feed wires were torn down, cut up, and thrown in piles beside the highway. Some rails were torn up; others were covered over. The poles were taken down by city employees.

The new trial was awarded because of the court's conclusion that plaintiff was entitled to use this property free from this type of city interference, and that the verdict of the jury could not stand in the face of evidence indicating that the property taken had some value.

The gist of appellant's argument is that plaintiff did not make out a prima facie case in that it was not shown that the Dalton Street Railway Company had any right under its charter to operate a street railway upon the streets of the City of Scranton. There is no doubt that prior to incorporation of the city in 1866, the right of way was the private property of the Turnpike Company which had the right to erect gates and collect tolls for use thereof over its entire length. The road was not therefore subject to ordinary municipal control as a street. After the contract of 1889, the subject matter was "no longer a private turnpike but was exclusively a city street": *The Providence & Abington Turnpike and Plank Road Company v. City of Scranton,* supra. The record is by no means clear as to whether the right of way involved in this action coincided in whole or part with the subject matter of the agreement of 1889. It is urged that only a small fraction of the highway improvement which was the subject matter of that contract was included within the right of way here in issue. Since a new trial must be had this phase of the case may be reexamined. Plaintiff's recovery as to that portion of the roadway, if it be entitled to such recovery, must be con-

sonant with its position as user of an "exclusive city street."

As to the remainder of the highway it is asserted that the Dalton Street Railway Company never had a right to operate upon the streets of Scranton. Article XVII, section 9 of the Constitution of Pennsylvania provides that "no street passenger railway . . . shall be constructed within the limits of any city . . . without the consent of its local authorities." The mere granting of a charter to a street railway company confers no right to lay a track on any street without the consent of the proper local authorities: *Larimer & Lincoln Street Railway Company v. Larimer Street Railway Company,* 137 Pa. 533. Such consent was given here to the Northern Electric Street Railway Company, operating on West Market Street, and there was no imposition of a condition that rights either existing in or conferred upon the Northern Electric should not be transferable without the consent of the city. As a general rule, a franchise to use streets, where its transfer is not forbidden by Constitution or statute, is generally held to be assignable. Even prior to the Act of May 14, 1889, P. L. 211, one street railway company could lease the line of another: *Rafferty v. Central Traction Company,* 147 Pa. 579; *Pinkerton v. Pennsylvania Traction Company,* 193 Pa. 229. The lease of a perpetual right of way to the Northern Electric in 1906 expressly inured to the benefit of its assigns and mortgagee. Likewise, the deed of 1915 from the Turnpike Company to the Northern Electric and Dalton Street Railway Companies declared that the rights transferred thereunder were to inure to the railway companies, their successors, lessees and assigns, and to their mortgagee or mortgagees. And in addition, the mortgage given by Northern Electric in 1906 included all its rights.

When this mortgage was foreclosed and the property transferred by sheriff's deed in 1931, all such rights passed to the purchaser. The fact that the deed ran to

a private individual who as such would have no right to operate a street railway in Scranton, is immaterial. The actual purchaser was the present plaintiff and had the nominal vendee refused to execute a deed to the Dalton Street Railway Company, the latter could have compelled such action. Defendant claims no title passed to the rails, trolley wire and other equipment, contending they were personalty. Under our cases, however, such property is considered as real estate, and included in the mortgage: *Morris's Appeal*, 88 Pa. 368; *Titus v. Poland Coal Co.*, 275 Pa. 431. Purchase of the franchise and property of one street railway company by another under mortgage foreclosure is valid: *Old Colony Trust Company v. Transit Co.*, 192 Pa. 596.

Appellant insists, however, that this suit cannot be maintained against the City of Scranton, because by the Act of June 22, 1931, P. L. 741, West Market Street was taken over by the Commonwealth of Pennsylvania as a state highway and ceased to be exclusively a public street of the City of Scranton. It is true that Section 4(f) of the Act of 1931, P. L. 720, authorizes the Department of Highways to close streets to traffic during the time improvements are being made, and that Article II, section 1(c) of the Act of July 26, 1913, makes it the legal duty of every public service company to make all changes and alterations that may be necessary for the accommodation of the public. However, section 8 of the Act of June 22, 1931, P. L. 749, provides that the Department of Highways shall not enter into agreements with others for construction or repair of streets unless the city shall first "take the necessary steps to compel all public utility companies to make any necessary replacements . . . prior to the commencement of work." What is more, the contract between the city and state required the former to remove all structures within the required right of way "including facilities of the Northern Electric Street Railway Company." In the contract between the city and the contractor, the city expressly

promised to pay for the removal of the track and the disposal of the trolley facilities, and the specifications provided that the materials removed became the property of the city. In the face of all these facts, it taxes credulity to say that there was no evidence in the case to show that the City of Scranton had anything to do with the acts complained of in this case. City police stopped plaintiff's cars; its employees placed barriers across the street and removed rails; the city by contract was bound to have the tracks and fixtures removed and was to receive them as its own property.

If plaintiff did not comply with the conditions attached to the granting of the ordinance consenting to its operation of a street railway, the ordinance adopted by Council and affirmed on December 5, 1931, vacating and annulling the consent was valid. The grounds for such withdrawal of consent were that the Northern Electric Railway Company had not furnished a bond for $5,000 to the city before beginning construction, had not kept its tracks filled with substantial materials, and had abandoned its service within the City of Scranton. Objection to the failure to file a bond was not made until twenty-seven years after authorization of construction and non-performance of this condition cannot be taken advantage of now. Moreover, the record discloses that the city had promised to make the necessary repairs and the Northern Electric had promised to pay for such repairs, and that the company did pay for repairs made. It is true that operations were suspended for four months, but this was under order of the federal court, service being resumed immediately after the foreclosure sale. If service had been abandoned, an entirely different situation would be presented. The ordinance of October 17, 1931, cannot prevail.

The rights of the city spring from the agreements and grants to it by the Turnpike Company, and it has no greater rights than were transferred. Property of the plaintiff was taken by the city; the extent of the taking

is a question to be determined when the case is retried. The property taken, even as junk, would have value. The verdict of the jury was capricious and the trial court did not abuse its discretion in granting a new trial.

What has already been stated makes consideration of the other assignments of error unnecessary. A new trial must be had.

The judgment is affirmed.