# Conestoga & Big Spring Valley Turnpike Road Co., Appellant, *v.* Lancaster City.

[Marked to be reported.]

*Turnpike companies—Toll gates—Municipalities—Nuisances.*

A toll gate, located by a turnpike company in a proper manner within the limits of a municipality, is not such a nuisance in itself as will justify the municipal authorities in removing it in a summary and violent manner : Easton Passenger Ry v. Easton, 133 Pa. 505, applied.

A turnpike company was authorized by the act of April 17, 1861, P. L. 327, to construct a turnpike road from Vine street in the city of Lancaster to the Conestoga creek, with general power to erect a gate or gates and receive tolls.   By the act of April 17, 1867, P. L. 1868, p. 1310, § 2, the company was authorized to charge and receive tolls from all persons using or traveling on its road for any distance exceeding one fourth of a mile, notwithstanding they do not pass through a gate.   The road as constructed is about two thousand four hundred and ninety-one yards long, and more than a mile of this distance is within the city limits.   It was

possible to construct the road between the points mentioned in the charter entirely within the city limits. The company erected one toll gate only, and that within the limits of the city. This gate was erected in 1869, and tolls have been collected there since that year. *Held*, that the company had a right to locate this gate where it did, and to charge tolls, and that the city should be enjoined from removing it.

Argued May 31, 1892. Appeal, No. 57, July T., 1892, by plaintiff, from decree of C. P. Lancaster Co., equity docket No. 2, p. 383, dismissing bill in equity. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MCCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity for an injunction to restrain defendant from removing plaintiff's toll gate.

The bill, after setting forth the provisions of the acts of April 17, 1861, April 17, 1867, and January 26, 1849, as stated in the opinion of the Supreme Court averred that " the said turnpike road occupies the streets of said city on the city plan, adopted by the court of quarter sessions, only from Vine street to Susquehanna street, for a distance of about two thousand nine hundred and fifty-six feet, and the remainder of said turnpike road does not occupy the adopted streets of the city, except at such places where it crosses them, and on that in the city is located the gate for the collection of tolls, which gate is within the city limits, but not on an adopted street, and its location is essential for the collection of the same. That in the acts of assembly hereinbefore mentioned, among the powers and privileges conferred upon the said company, plaintiff, is the express right to erect and maintain said toll gate within the limits of the city of Lancaster, and to charge and collect from all persons using the road for any distance exceeding one fourth of a mile the toll allowed by law; that defendant intends and threatens to remove, tear down, prostrate and destroy said toll gate. That such removal, tearing down, prostration and destruction will work irremediable damage to your orator, and that no damage can compensate it therefor."

The bill prayed that " the defendant, its mayor, street commissioner, agents, workmen and employees, may be enjoined, and restrained from tearing down, prostrating and destroying said toll gate."

The answer denied the right of the plaintiff to erect the toll gate within the limits of the city, and that the removal of it would cause irremediable damage to the plaintiff.

The case was referred to William R. Wilson, as master. Counsel for plaintiff requested the master to find that the toll gate was located in the best and most suitable place. This request was refused. The master reported on this subject as follows:

"Its present location is certainly about the best place for the company's interest. Because, where it now stands, every traveler passing over the bridge, and going to Lancaster, must pass through it. There is no escape. Whereas, if placed several blocks or squares farther inside the limits of the city, travelers, consisting of market people, and the public generally, could avoid it, by taking branch roads. Nothing is seen in the surface of the ground (and to aid him in a proper understanding of the testimony the master went himself over the turnpike from the beginning to its end) to prevent a different location, either further in or further out.

"Rockland street, or now the turnpike, runs mostly obliquely or diagonally. Whereas, nearly all the other streets—the old ones, as well as those that were laid out under the plan of 1873—are at right angles; and is well built up with houses, on both sides, to nearly, if not quite one third its length from Vine street, and to that extent forms a part of the visible city, and of course under its municipal care and government. The toll charged is three cents, or for the round trip five cents. Whether this rate is applied to all cases, or only generally, was not shown."

The master recommended that plaintiff's bill should be dismissed with costs. Exceptions to the master's report were overruled, and a decree entered dismissing the bill.

*Errors assigned* were (1–6) dismissing exceptions and (7) entering decree, quoting them.

*J. Hay Brown, W. U. Hensel* and *A. J. Eberly* with him, for appellant.—As appellant had the right to build its road from Vine street to the Conestoga creek, wholly within the city limits, it had also the unquestioned and expressly given right to erect a gate or gates within the city. As less than

one fourth of a mile of the road was beyond the municipal limits, the intention of the act of April 17, 1867, providing that a person traveling on the road for any distance exceeding one fourth of a mile shall pay toll, was that a toll gate might be erected within the city limits.

The legislature had the right to confer such a power upon the appellant: Stormfeltz v. Manor Turnpike Co., 13 Pa. 555; Dillon, Mun. Corp., 4th. ed., p. 780, § 657, p. 798, § 669.

Even if the power was not expressly given, it would have the right by implication. Otherwise the grant of the franchises would be defeated: Pittsburgh Junction R. R. Co.'s Ap., 122 Pa. 511.

The city of Lancaster has been guilty of such laches that its rights to remove this gate, if it ever had any, should not now be recognized: Dunmore Borough's Ap., 1 Mona. 567; Groff's Ap., 48 Leg. Int. 427; Bispham, Eq., p. 59, § 39; Parrish v. Koons, 1 Pars. 78.

*E. M. Gilbert,* with him *G. C. Kennedy* and *W. R. Kennedy* for appellee.—There was no express grant to erect toll gates within the city limits. A corporation exercising the right of eminent domain takes nothing by its charter except what is expressly, plainly and unequivocally granted: Com. v. Erie & Northeast R. R., 27 Pa. 339; Lance's Ap., 55 Pa. 17; Bank of Pa. v. Com., 19 Pa. 144; Johnson v. Phila., 60 Pa. 445; Pittsburgh & Connelsville R. R. v. Allegheny Co., 63 Pa. 135; Pa. R. R. Co.'s Ap., 93 Pa. 150; Groff's Ap., 128 Pa. 633; 2 Dillon, Mun. Corp., 4th. ed., § 657, p. 780. Stormfeltz v. Manor Turnpike Co., 13 Pa. 555.

Under the cases above cited, the legislature might charter a turnpike to be built wholly upon the streets of a city. But if in the charter there was no express authority for the erection of a toll gate, none could be erected.

The title of a municipal corporation to the soil of its streets is paramount and exclusive, and no private occupancy for whatever time, whether adverse or permissive, can vest a title inconsistent with it: Barter v. Com., 3 P. & W. 253; Rung v. Shoneberger, 2 Watts, 23; Com. v. Alburger, 1 Wh. 469, 488; Pennypot Landing Case, 16 Pa. 79; Wilkesbarre's Ap., 100 Pa. 313; Stevenson's Ap., 17 W. N. 429; Phila. v. P. & R. R. R., 58 Pa. 253; 2 Dillon, Mun. Corp., 4th. ed., p. 798, § 669.

OPINION BY MR. CHIEF JUSTICE PAXSON, October 3, 1892.

The appellant company was incorporated by the act of assembly of April 17, 1861, with power to construct a turnpike road from Vine street, in the city of Lancaster, along and upon Rockland street, through said city, to the Conestoga creek, and thence to Mill creek in said county. The road was completed in 1869, from Vine street, in the city of Lancaster, the place of beginning, designated by the act of incorporation, to the Conestoga creek.

The 3d section of the act of incorporation expressly provides that whenever the said company shall have finished its road from Vine street, the place of beginning, to the Conestoga creek, it shall have power to erect a gate or gates and receive tolls.

When the road was completed a report of that fact was made to the governor of the commonwealth in accordance with the 12th section of the act of 26th of January, 1849, P. L. 14. Whereupon he issued a license permitting the said company to erect such and so many gates across the said road, between those points, as the company might deem necessary for the collection of its tolls.

It is provided by the 2d section of the act of assembly of April 17, 1867, that it shall and may be lawful for the said company to charge and receive tolls from all persons using or traveling on its road for any distance exceeding one fourth of a mile notwithstanding they do not pass through a gate.

The distance from Vine street, where the road commences, to the Conestoga creek, where it at present ends, is about two thousand four hundred and ninety-one yards, and more than a mile of said distance is within the city limits.

The appellant company erected but one toll gate upon the line of its road and that gate is within the limits of the city of Lancaster. This gate has been maintained since the year 1869, and tolls collected there from persons passing over the road as authorized by the charter of the company. The city now regards the toll gate as a nuisance, or at least, as objectionable, and denies that its location is essential for the collection of tolls. It threatens " to remove, tear down, prostrate and detroy said toll gate." It is so averred in the bill and expressly admitted in the answer.

This heroic mode of enforcing supposed municipal rights was pointedly condemned by this court in Easton Passenger Railway v. The City of Easton, 133 Pa. 505. It may very well be that by reason of the growth of the city of Lancaster, a toll road, and especially a toll gate, within its limits has become objectionable and a burden to its citizens. We may assume, however, without any violent strain, that it is the toll, and not the toil gate, which is the cause of this trouble. The latter could hardly be seriously regarded as a public nuisance, and, in any event, could be so changed as to avoid objection upon that ground. The more manly, and at the same time the honest way to free the city from toll would be to purchase and pay the company for its franchises. This course has frequently been pursued in some parts of the state, both as regards turnpikes and bridges. What the city now proposes to do amounts practically to confiscation. This is a short way to get rid of chartered rights, but it is one the law does not approve.

The appellant company had a clear right to locate its gate where it did and to charge tolls. Under its charter, and the act of 1849, before referred to, it had the right " to erect and fix such and so many gates upon and across the said road as will be necessary and sufficient, to collect from all persons, otherwise than on foot, the same tolls as hereinafter authorized and granted." The gate was located in its present position for the purpose of collecting tolls from all persons who passed over the road in vehicles. This, as will be seen, was just what the charter authorized. The city contends that the gate should be located outside the municipal limits, and where it was conceded most persons could avoid passing through the gate, and our attention was called to the provision in the charter of the company which enables it to collect toll by means of a suit at law from persons who do not pass through the gate. This was urged as a reason why the removal of the gate would cause no injury to the appellant company. It is difficult to treat this proposition seriously. The idea of collecting tolls, amounting perhaps from one to five cents from each individual, by means of a lawsuit, is certainly exceedingly novel. It is too impracticable to bear discussion. The object of this provision of the charter was obviously to enable the company to collect tolls in

this manner from persons who might attempt to defraud it by avoiding the gates, after using the road.

If the gate in question is a public nuisance, it is singular that the city has been twenty-three years in finding it out. It was urged, however, on behalf of the latter that the lapse of time furnishes no defence for an encroachment on a public right. This principle is undoubtedly true, but it has no application to the case in hand. The appellant company has committed no encroachment on the public rights of the city of Lancaster. On the contrary, it has been acting strictly within the line of its chartered rights. It had as much right to locate its gate within the city limits as it had to locate it outside the city limits. Under its charter it might have constructed its road from Vine street to the Conestoga creek entirely within the limits of the city. Had it done so, the argument of the appellee, carried to its logical conclusion, would have prevented the company from locating a gate anywhere upon the line of its road. This brings us directly to the reductio ad absurdum.

The decree is reversed, the plaintiff's bill is reinstated, and it is now ordered that a perpetual injunction issue as prayed for in the bill. The costs of this appeal, and all the costs below, to be paid by the appellee.